Good morning. May it please the Court, my name is Karen Hanks, and I represent SFR Investments Pool 1, LLC. I'd like to reserve four minutes of my time for rebuttal. There are a lot of issues in our brief, obviously, but I'd like to focus my time today talking about why PERLA, the futility of tender case, does not apply to the facts here. And one of the main points of contention that seemed to be missed by the District Court and still seemed to be missed by Bank of America here in their briefing is that the argument is the Nevada Supreme Court has recognized that if Miles Bauer wasn't involved and if Bank of America wasn't involved, then PERLA is not extended. And the reason why Bank of America was not involved here is they were the owner of the loan, but they didn't service the loan. It was Carrington who serviced the loan. And the servicer of a loan is the person who's responsible for the day-to-day operations. The testimony in this case confirms they're the entity that would have responded to the foreclosure notices. They are the entity that would have, if they even tendered, would have taken care of that. But they testified that was not their practice. They never hired Miles Bauer. They were never instructed to hire Miles Bauer. And they never even tendered, even absent Miles Bauer. Ms. Hanks, who is, as you view it, the party to tender then under PERLA? Are you suggesting that it would be Carrington and not Bank of America, and why? Because PERLA refers to them both. It's Carrington on behalf of the owner of the deed of trust, but it's Carrington first and foremost. But the reason why it doesn't really matter, even if it was Bank of America who's tendering to protect their interest in the deed of trust through their servicer, the reason why it doesn't matter is the Miles Bauer involvement is paramount because that's what was being rejected. But wasn't there a known policy here to reject conditional tenders? Miles Bauer's tenders. Those were the only conditional tenders that were being rejected. Well, I think the record reflects that AMS had that policy, and then the question is whether it was known and to whom. But the policy related to Miles Bauer letters. That's where the condition was coming from. There was no evidence of any other type of tender ever being rejected by AMS. In fact, their testimony said we would always accept payments. What they were talking about was the letter that Miles Bauer always sent with their check, which was essentially an accord and satisfaction letter. It was a letter where Miles Bauer stated their position about what comprised the super priority, told the HOA they had to accept those conditions, and by accepting the check, they were unconditionally accepting those. Your position is Carrington wouldn't have used Miles Bauer? Correct. Correct. And that AMS's policy of rejecting was Miles Bauer's tenders. There is no evidence they rejected any other type of tender. Why wouldn't Carrington have used Miles Bauer? That just wasn't their policy. That was Bank of America's policy when they serviced a loan. But Bank of America didn't service this loan. That's the only time Bank of America ever hired Miles Bauer, was when they were servicing the loan. The testimony reflects that. Miles Bauer was hired by Bank of America. Did this just predate that period of time when Bank of America was servicing, or just in this case, they didn't service the loan? Yes, correct. It's not that it predates. It's just Bank of America, when they did not service the loan and owned the loan, they didn't do this. They're outside of it because the servicer is in charge of all of those day-to-day operations. And Carrington confirmed it did not ever hire Miles Bauer, and it would never tender. And in fact, Bank of America also confirmed, well, we wouldn't have done anything because that's the servicer's responsibility, and we wouldn't have even instructed a servicer to hire Miles Bauer, even though we may have done it as a servicer of a different loan. So that's the distinction here. Ms. Hanks, but I guess I understand that AMS's 30B6 witness said it was an across-the-board policy. So how much turns on whether it was a Miles Bauer policy or a general policy that AMS testified it applied to all tenders? Well, I think the caveat to understand with that is there was only one entity tendering during this time frame, and that was Miles Bauer. So when AMS's 30B6 testifies and says if there was a conditional letter, she refers to the letter, she's referring to the Miles Bauer letter. But even so, that was our point. Carrington would have to show in this case, how would you have tendered then? Would you have tendered with a conditional letter? Then you might be able to show there was a policy. But they can't show that because they never tendered. They never hired Miles Bauer. They never hired a different entity that might have sent conditional letters. You're saying they never tendered in this case, but did they ever tender in other cases? No other cases. That's my point, Your Honor. It wasn't the testimony that they never tendered in this case. They never tendered in any case. That was the testimony. We asked the question, did you ever have a policy to hire some other entity or even yourself tender directly? No. That was not our policy. So that's the point. And when AMS is referring to conditional letter, they're only referring to the Miles Bauer letter. That is the only entity that was ever tendering during this time frame. I will do a caveat, though. While we asked the question of 2013 and 2014, which is the relevant time frame, the only evidence offered by Bank of America in this case was 2011 and 2012. But again, the only evidence they ever offered were the Miles Bauer letter. And when you say the only entity tendering on behalf of Bank of America or just in general to any collectors? No, my understanding is it was only when Bank of America was the servicer of a particular loan. So the owner could be Deutsche Bank, U.S. Bank. I mean, there's a multiple of owners of deeds of trust and loans. Where Bank of America was the servicer, they had the practice of hiring Miles Bauer. I'm not aware of any case, and I think Bank of America also confirmed that in this case, when they're the owner of the loan, they do not hire Miles Bauer. And I think Mr. Rock Young in the testimony also confirmed he was never hired by Carrington when he worked for Miles Bauer, and they were only ever hired by Bank of America. So it's only when Bank of America serviced the loan. And I know it sounds odd. Why would Bank of America, when it owns a loan, not do the same thing as a servicer? But be that as it may, that's how it works. Is there any evidence of the servicing agreement between Bank of America and Carrington in the record? No, that was not offered in this case, Your Honor. We're not aware of that. All we have is the testimony from Bank of America saying, we wouldn't do anything with the foreclosure notices. The servicer would be responsible for that. And then Carrington confirmed they were the servicer for the relevant time period, and their policy was not to hire anyone to tender, or even tender. And I just want to highlight, and then I'll close, and I'll leave the remainder of my time for rebuttal, unless the Court has any other questions. We do have a case directly on point, and that's the Farrell Street case, where the Nevada Supreme Court said that PIRLA should not be extended, quote, in a situation in which Banna and Miles Bauer had only a hypothetical involvement with the secured loan during the HOA's foreclosure proceedings. And in that case, they reversed the judgment in favor of Bank of America. And in that case, Bank of America was actually the servicer, at least that's what I can glean from the unpublished disposition, that they were the servicer and their argument was, because we were the servicer, had we received notice, we would have hired Miles Bauer. So they were even more connected in that case, and the Nevada Supreme Court said, no, we're not going to extend PIRLA to a hypothetical hiring of Miles Bauer. But we're even further removed in this case, because there's no question Bank of America was not involved in hiring Miles Bauer. They wouldn't have been involved, because they were only the owner of the loan, and Carrington wouldn't have hired Miles Bauer. So Farrell Street is directly on point and says we don't extend PIRLA to that type of situation. I'll reserve the remainder of my time if there's no further questions. Thank you, Ms. Hanks. Good morning, Justices Breese, Johnson, and Ezra. May it please the Court, my name is Douglas Gerrard, and I represent Bank of America in this matter. Reduced to its simplest form, this case is about SFR's strategy of purchasing a property at a May 2014 HOA foreclosure sale, which was subject to Bank of America's deed of trust lien because of an excused tender, and then waiting for more than five years until September of 2019 to bring a quiet title claim, thinking that if Bank of America had taken no action in the intervening five years, it no longer had the right to defend itself against SFR's claims. This strategy failed because of the controlling law of Thunder Properties, which tells us that an HOA foreclosure itself does not start the clock running on the four-year statute of limitations period for a quiet title action. Why? And this is important, because SFR refuses to accept the Nevada Supreme Court's logic. It is because a valid tender or an excused tender satisfies the super-priority portion of the HOA's lien, meaning only the sub-priority portion of the HOA's lien was ever foreclosed, meaning SFR took its title to the property subject to Bank of America's lien. Okay, well, how do you respond to opposing counsel's argument that it's not clear that it's a conditional tender? Well, it's really quite straightforward, Your Honor. If you look at Perla del Mar and then also look at the subsequent case that was decided just last year, which is the Bank of America v. N.V. Eagles LLC, which is 525 P. 3rd, 1233, that's an unpublished decision. But in that case, the Nevada Supreme Court stated that there are only two requirements for the doctrine of excused tender to apply and that reliance is not a requirement, which is exactly what's being argued. They said there must, number one, be a policy of rejecting any tender that is less than the full lien amount. We provided you in our brief that that policy existed for AMS. In fact, we pointed out to the Court in the brief that there had been 176 tenders made by Bank of America between January of 2012 and May 31st of 2014, which is the date of this foreclosure. But here, Bank of America wasn't servicing, right? Doesn't make any difference. Bank of America owned the loan. They were the beneficiary. Under Nevada's very clear jurisprudence, the original SFR case from 2014, the Supreme Court went to great lengths to say that any beneficiary of a deed of trust had the right to tender payment to protect and preserve its lien interest. I guess the very narrow ledge that SFR has placed itself upon in this case is somehow trying to distinguish itself from Perla del Mar and from Indy Eagles, which said the second element is the party to tender must know of that policy. That's it. There's no requirement that the servicer know of that policy. If the servicer knew of the policy, in this case Carrington, as an agent of Bank of America, that would be sufficient, but it's Bank of America that is at issue. Remember, the standard is there must be a policy of rejecting. That's very clear. We pointed that out. The actual testimony of AMS was that, quote, any payment that was received for less than the balance due that indicated it was for payment in full was not accepted. And 176 times, Bank of America had made tenders up to the point of this foreclosure to AMS, and every single one of them had been rejected. Were those all Miles Bowers? Miles Bower made each of those tenders, but that doesn't matter. Miles Bower is acting as Bank of America's agent in this case. And Bank of America was well aware that AMS was rejecting its tenders. So when you couple that with Nevada law, which says there's no reliance argument, there's no reliance requirement, in other words, if the policy existed and if Bank of America knew that existed, it doesn't matter whether they hired somebody like Miles Bower or if their servicer ever hired someone like Miles Bower to make a tender. The only requirements are that there was that policy, that's undisputed, and secondly, that if the policy existed, that my client, Bank of America, knew about it, which it did. 176 times, their tenders have been rejected leading up to this foreclosure. So that disposes of that argument. You know, this idea or this concept that Feral Street Trust somehow changed anything is a gross mischaracterization of that case. If you read the case itself, the Supreme Court in that case said, quote, key to our conclusion is that respondent did not obtain any interest in the deed of trust until after the foreclosure sale. Meaning, in that case, Bank of America bought the loan, but didn't do it until after the foreclosure sale was complete. And on that basis, because they did not own the loan, the Supreme Court said that we are not persuaded that, per the Del Mar, applies in a situation where respondent, meaning Bank of America, and Miles Bower only had a hypothetical involvement. What is your basis on this record for saying that this lien would have been paid conditionally? There is no basis. I'm not saying that it would have been paid conditionally. What we're saying is, we knew the policy existed, and we knew that AMS was rejecting all tenders. Don't you have to say that it would have been? That it would have been made? Paid conditionally? No. That's what Envy Eagles pointed out. Because that's what SFR has been arguing to the Nevada Supreme Court. If you can't show that you were going to have made a tender, then it's not enough. There's some sort of a reliance argument. There is no reliance requirement in this standard for excused tender under Nevada law. And Envy Eagles makes that crystal clear. So, the point here isn't that Carrington or Bank of America on this loan made a tender or attempted to make a tender, because neither of those things occurred. The point is that if a tender had been made, it would not have been accepted because that was the policy, and Bank of America knew of that policy. Doesn't that depend on what form of tender you're making? I'm sorry? Doesn't that depend on what form of tender you're making? Because I thought the problem with the Miles Bowers tenders was that a conditional payment stated that it was paid in full. But AMS was otherwise accepting payments that were not the full amount. It was the payment in full, the condition that seemed to be the sticking point. Well, it's interesting that counsel makes that argument and did in her brief as well. But you notice there's no evidence in the record anywhere that AMS ever accepted any payments, period. I mean, they testified the ones we were rejecting were for things that were less than the full amount, which was every tender that was ever made was for just the super priority portion of the lien. So it was always less than the full amount. So they were always rejecting every tender. They didn't provide any evidence of AMS ever accepting a tender. They only pointed to the testimony that said, if it was for less than the full amount of the lien, we would reject it. And it was assumed that that was going to be, in other words, the tender was being made with the assumption that the full obligation was being taken care of. And that was in every tender, every single tender. So this idea that somehow, you know, the fact that this tender that was not made, there was no tender made in this case, but because the excused tender policy applied under very clear Nevada law, the district court got it right when it said, there's no, there's, you know, there were, let me put it this way. There were three other defenses that could have also resolved this case. The district court didn't even address the other two. Just said, look, on this record, under the very clear and there was a policy and Banner was clearly aware of it. Bank of America was clearly aware of it. What's, there's this question I think your friend raised about Perla might be ambiguous about whether it's the servicer or the beneficiary who is the party to tender. Because obviously the, the, the servicer on the, you know, when we're not talking about presumptions, we're talking about facts on the ground. The servicer is most likely to know that their check is rejected if they're the ones doing that. So what's your best argument for why it should only be the beneficiary and that the servicer's knowledge of the policy is irrelevant? Well, I don't think the servicer's knowledge is irrelevant. I think that both are irrelevant, right? In other words, if the servicer had that knowledge, that's enough to satisfy the standard in Perla del Mar. If the beneficiary had that knowledge, that's enough to satisfy the standard in Perla del Mar. The standard is only that the beneficiary know. If the servicer had that knowledge, that's also satisfactory. But that, that's not the way that agency law usually works. Yes, the, the, in other words, the knowledge of the agent may be imputed to the principal, but the knowledge of the principal may not be imputed to the agent. There's case law that goes both ways on that. I understand what you're saying, Judge Johnson, but, Justice Johnson, but that's true that there are, there are cases that go both ways on that issue. But again, in this context of this, it doesn't matter. Because we know from the original SFR case and from Perla del Mar that if the holder of the deed of trust, which is Bank of America, knows of the policy, that's enough. It doesn't matter whether it's, you know, its servicer knows that or not. And of course, the record is devoid of any evidence that would suggest that Bank of America didn't have knowledge of this or that Bank of America would not have, have directed a tender on its own under other circumstances. As the Court saw in the under, in the statement of facts that was presented, there were other things at issue. In this case, there was a short sale that had been approved and a forbearance letter by the HOA where the foreclosure would have closed and, I'm sorry, the short sale would have closed and paid everyone off. And, and what happened is the, the sale went forward by the HOA trustee, even though they had said they weren't going to hold it for another week. And so on the date that they closed the, that they had the foreclosure sale, that is the same date that this short sale would have closed. Which is why nobody was thinking about tender. Because everyone was going to be paid and it was a huge surprise when, you know, the sale went forward even though it was supposed, the lien was supposed to have been paid off in full. So my time, I, oh, I thought my time was up. I'm sorry. We'll let you go a little over, but I think we have your argument. Okay. Okay. Thank you, Mr. Chairman. Unless you have any other questions, thank you for your time. Thank you, sir. I want to make very clear because there was a comment that there was testimony that AMS would have rejected partial payments. That is absolutely not true. I cited the record at ER 134, and I'd just like to highlight what AMS testified. They testified, and was part of the process the same if payments were made, partial payments were made by third parties? Yes, if no stipulations were attached. Okay. So we discussed specifically letters sent with the check by Miles Bauer. Do you recall that? For a different property? Yes. We discussed with respect to a different property. And your response, I believe, to counsel's question with regard to whether or not those were accepted was that partial payments were accepted if they didn't have stipulations, correct? Correct. So if you would have just simply received the check with no letter that included language, or what you classify as stipulations, would AMS have accepted and applied that payment? Yes. So that's our point. Our point is not reliance. Our point is not that somehow the beneficiary indirectly relied on this through their service or Carrington, when Carrington had no knowledge of this policy because they never hired Miles Bauer. The argument is you, Carrington, would have never tendered through Miles Bauer. You would have never given a conditional letter such that AMS would have rejected it. And if you can't show that, you can't show a futility of tender. If you had sent a payment, it would have been accepted. That's what they can't show. They cannot show. I mean, Bank of America's response, I think, is something like, almost 200 times we tried this and you never accepted the tender. Because they sent a letter that was conditional. If they had taken that letter off, the payment would have been accepted every day of the week and twice on Sunday. Why they didn't do that, I can't speak to that. But that's not this record. And we don't have to worry about that because Carrington wouldn't have done it. And that's the point. The policy of rejection was so intrinsically tied with Miles Bauer and their letter that that's the only type of payment that was being rejected. So you cannot, as Carrington, and even Bank of America's beneficiary. It was the only type of payment that's being rejected as a factual matter or as a policy matter? In other words, in practice, was your client accepting partial payments? Not my client, Your Honor. My client's the purchaser at the sale. But AMS? Yes. According to the testimony, the practice was they would accept partial payments. It was the Miles Bauer letter that accompanied the payment that was the point of contention. So had they detached that letter, they would have accepted it. And while there's not evidence in this case, I can tell you there was other collection companies that had the same policy, and eventually Miles Bauer detached the letter or changed the language, and the company started accepting checks. That testimony wasn't established here for AMS because Miles Bauer, excuse me, Bank of America only offered evidence for 2011 in the 2012 time period. But the 2013 and 2014 time period, AMS confirmed, if you had just paid with a check and no conditions, we would have accepted. So our position is, Carrington has to show, we would have tendered the exact way Miles Bauer would have tendered, to rely on that rejection policy. Okay. I think we have your argument. I want to thank you for your argument, Ms. Hanks. Thank you, Mr. Girard. This matter is submitted.
judges: BRESS, JOHNSTONE, Ezra